THE STATE, EX REL. SCHULTZ, ET AL., *v.* CUYAHOGA COUNTY
BOARD OF ELECTIONS, ET AL.

[Cite as State, ex rel. Schultz, v. Bd. of Elections (1976),
50 Ohio App. 2d 1.]

(No. 35413—Decided March 9, 1976.)

Mr. Arthur L. Cain, for relators.
Mr. John T. Corrigan, prosecutng attorney, and Mr. John L. Dowling, for respondent.

JACKSON, J. By Resolution No. 5-75, adopted on February 15, 1975, the Olmsted Township Board of Trustees certified to the Cuyahoga County Board of Elections petitions seeking a referendum upon a proposed amendment to the zoning plan of Olmsted Township, and requested that the Board of Elections place the same upon the ballot at the next election. The Board of Elections refused to place the issue upon the ballot upon the grounds that the petitions circulated for signature stated the nature of the proposed amendment in such a way as to be misleading to those who were asked to place their signatures upon the petitions.

On December 3, 1975, the relators filed an original ac-

tion in this court seeking a writ of mandamus which would compel the Board of Elections to place the issue upon the ballot at the next election.

As provided by statute, a mandamus is:

"* * * a writ, issued in the name of the state to an inferior tribunal, a corporation, board, or person, commanding the performance of an act which the law specially enjoins as a duty resulting from an office, trust, or station." R. C. 2731.01

It has generally been said that the issuance of a writ of mandamus is authorized when there is no adequate remedy at law and where there is a clear right to have the act performed. *E. g., State, ex rel. River Grove Park, Inc., v. City of Kettering* (1962), 118 Ohio App. 143, 146. With respect to the latter requirement, this court has recently held:

"A party seeking a writ of mandamus assumes the burden of establishing that he has a clear right to the relief sought and that the party against whom the writ is directed has a clear duty to act, but has failed to do so." *State, ex rel. Ardco, Inc., v. Cuyahoga County Board of Elections* (Cuyahoga County Court of Appeals, April 10, 1975), Case No. 33943, at 3-4.

There is no question in the instant case that if the allegations of the relators' claim are substantively correct, they are without a remedy in the normal course of law and mandamus would be a proper remedy. Therefore, the issues before this court are two-fold:

(1) Is the Board of Elections required to place upon the ballot all referendum issues certified to it without regard to the sufficiency or validity of the petitions?

(2) If the Board of Elections was not so required, did it properly determine that the petitions, in this instance, were misleading and therefore should not be placed upon the ballot?

I.

R. C. 3501.11 provides, in relevant part:

"Each board of elections shall exercise by a majority vote all powers granted to such board by Title XXXV [35]

of the Revised Code, shall perform all the duties imposed by law, and shall**.***. 

"(K) Review, examine, and certify the sufficiency and validity of petitions and nomination papers .*.*.*." Under these provisions the county boards of election have not only the right but also the duty, to scrutinize referendum petitions to determine whether their sufficiency and validity can be certified. *State, ex rel. Diversified Realty,* v. *Board* (1974), 42 Ohio App. 2d 56. *See State, ex rel. Janasik, v. Sarosy* (1967), 12 Ohio St. 2d 5. Decisions of the Supreme Court make it clear that the exercise of such power is quasi-judicial and that the county board of election has the power to decline to place an issue on the ballot in instances where statutory procedures are not complied with. *See State, ex rel. Home Fed. Sav. & Loan Assn.,* v. *Moser* (1974), 40 Ohio St. 2d 94; *State, ex rel. Stillo,* v. *Gwin* (1969), 18 Ohio St. 2d 66; *State, ex rel. Janasik,* v. *Sarosy, supra.*

We have reviewed the decision of the Ohio Supreme Court in *State, ex rel. Polcyn,* v. *Burkhart* (1973), 33 Ohio

---

[1]Each of these cases involved situations in which referendum petitions failed to comply with R. C. 3501.38(E) which provides that:

"Every petition paper shall bear the affidavit of the circulator that he witnessed the affixing of every signature, that all signers were to the best of his knowledge and belief qualified to sign, and that every signature is to the best of his knowledge and belief the signature of the person whose signature it purports to be."

In each instance a writ of prohibition was requested to prevent the county board of elections from placing the referendum issue upon the ballot. In all three cases the writ was allowed. In order for a writ of prohibition to issue three conditions must be satisfied:

"(1) The court or officer against whom it is sought must be about to exercise judicial or quasi-judicial power; (2) the exercise of such power must be unauthorized by law; and (3) it must appear that the refusal of the writ would result in injury for which there is no other adequate remedy." (Citation omitted.) *State, ex rel. Lehman,* v. *Cmich* (1970), 23 Ohio St. 2d 11.

Therefore, in order to grant the writs of prohibition in *Moser, Gwin* and *Sarosky,* the Ohio Supreme Court was required to conclude that the power of the county boards of election in deciding whether or not to place a referendum on the ballot was a quasi-judicial power.

St. 2d 7, where a mandamus was filed seeking to compel a city council to certify a referendum petition to the board of elections. In that case the Supreme Court's examination of constitutional provisions relating to a charter city and consideration of the past case law resulted in the conclusion that a city council's ''power to examine initiative petitions for sufficiency has not been declared by this court to extend beyond matters of form, or 'administrative determinations' concerning the number of valid signatures.'' *State, ex rel. Polcyn,* v. *Burkhart, id.,* at 10. While we are not unaware of the analogy that could be drawn between the powers of a city council and the powers of a board of election, we also realize the significant differences. Most important, we note that the very broad language of R. C. 3501.11 vests the board of elections with a power to go beyond the face of the petitions in determining validity and sufficiency, a power which neither city council nor township board of trustees are given. *State, ex rel. Diversified Realty,* v. *Board, supra,* at 58; 1971 Ohio Att'y Gen. Op., No. 71-052.

Moreover, while we believe there is a substantive/procedural division between those matters into which the Board of Elections may make inquiry, we conclude that *all* the requirements governing the petitions to be used for seeking a referendum, including the content of such petitions, are procedural in nature and thus subject to the scrutiny of the board.[2] The substantive limitation is only

---

[2] In *State, ex rel. Diversified Realty* v. *Board, supra* at 56, the relators sought a writ of mandamus to compel the Board of Elections to review referendum petitions to determine the applicability of relators' three objections, which were: "(1) None of the signatures on these petitions had the date of signing or the name of the township in which he resided as required by R. C. 3501.38 (C); (2) None of the affidavits of the circulators attached to these petitions conformed with R. C. 3501.38 (E); and (3) *The text of the referendum petition does not fairly and accurately present the question or issue to be decided in order to assure a free, intelligent and informed vote by the average citizen affected.*" (Emphasis added.)

The court stated that the "sole" issue before it was whether the board had the authority and the duty to rule upon the sufficiency and

that the board of elections has no power to determine that an issue should not be placed on the ballot because if passed it would be unconstitutional or otherwise illegal. *State, ex rel. McGovern,* v. *Bd. of Elections of Cuy. Cty.* (1970), 24 Ohio Misc. 135. We therefore find that the Cuyahoga County Board of Elections was under a duty to examine the referendum petitions in question and to make a determination as to whether they complied with the applicable standards for referendum petition. Thus, the writ of mandamus in the instant case cannot be granted upon the grounds that the Board of Elections chose to examine the petitions and found them to be deficient. Rather, the determination of the issuance of the writ must turn upon a consideration of whether the board was legally correct in holding that the petitions were not sufficient.

## II.

The amendment upon which the referendum was sought had its origin in the request of Home Links Golf Course that the Olmsted Township Zoning Commission amend the zone map of the unincorporated area of Olmsted Township to change the land owned by Home Links from one-familiy-residential property to four separate and independent zoning districts consisting of: (1) Residential-Multi-Family-Townhouse; (2) Residential-Multi-Family-Garden-Apartment; (3) Two-Family-Residential (Cluster/Duplex); and (4) Local Business. The first three parts of this proposal were accepted by the Zoning Commission, but the proposed change of the fourth area of land to Local Business was rejected. These recommendations were forwarded to the Olmsted Township Board of Trustees as required by statute.

On September 3, 1974, the Board of Trustees, at its public meeting, gave consideration to the Commission's recommendations. Although it is unclear as to the exact

---

validity of the petitions. It held that the board did have such power and duty under statute and case law and issued the writ of mandamus order to the board to "review, examine and certify the sufficiency and validity of such referendum petitions prior to the date of the November, 1972 general election." *Id.* at 58.

manner in which the various proposals were presented to the Board, an examination of Relator's Exhibit 2 indicates that each of the four proposals to create a new zoning district was made in a separately typed document which, by its nature and form, seemed to be a separate and self-contained resolution. In spite of the apparent independent nature of the four rezoning proposals, each of the documents bears the identification "A-74," and it is evident that the Board of Trustees treated them as one unified document. When the matter was brought to a vote, the Trustees voted in favor of denying the recommendations of the Zoning Commission by a vote of two to one. Since R. C. 519.12 requires a unanimous vote of the Board of Trustees in order to deny the Commission's recommendations, the recommendations of the Commission on Resolution A-74 were deemed adopted.

Subsequently, referendum petitions were circulated to submit the issue of the desirability of the three-part amendment to the voters.

The conflict over the sufficiency of the referendum petitions involves the question of whether the first page of each petition was misleading or not. In pertinent part, the language of the first page provides:

"We, the undersigned, qualified voters residing in the unincorporated area of the Township, being not less than eight percent of the total vote cast for all candidates for governor in this area at the last general election for governor, hereby petition and request the board of township trustees of Olmsted Township to submit the zoning amendment passed by the Olmsted Township Zoning Commission on May 16, 1974, and adopted by the board of township trustees of Olmsted Township at its meeting of September 3, 1974, to the electors of this area for approval at the next primary or general election:

"The following is a full and correct copy of the title of said amendment:

"RESOLUTION A-74

"A resolution to amend the zone map of the unincorporated area of Olmsted Township, Ohio, which is a part of

Resolution No. 1-52, adopted the 20th day of July, 1952 and amendments thereto, by changing the zoning to establish the following zoning district: to change from residential R1-40 to RMF-A district certain parcels of land located on the north and south side of John Road designated as part of permanent parcel Nos. 262-5-2 and 262-5-1 of Cuyahoga County maps.

"A resolution to amend the zone map of the unincorporated area of Olmsted Township, Ohio, which is a part of Resolution No. 1-52, adopted the 20th day of July, 1952, and amendments thereto, by changing the zoning to establish the following zoning district: to change from residential R1-40 to RMF-T district certain parcels of land located on the north and south side of John Road designated as part of permanent parcel Nos. 262-5-2 and 262-13-1 of Cuyahoga County maps.

"A resolution to amend the zone map of the unincorporated area of Olmsted Township, Ohio, which is a part of Resolution No. 1-52, adopted the 20th day of July, 1952 and amendments thereto, by changing the zoning to establish the following zoning district: to change from residential R1-40 to LB a parcel of land located on the south side of John Road designated as part of permanent parcel No. 262-5-1 of Cuyahoga County maps.

"A resolution to amend the zone map of the unincorporated area of Olmsted Township, Ohio, which is a part of Resolution No. 1-52, adopted the 20th day of July, 1942, and amendments thereto, by changing the zoning to establish the following zoning district: to change from residential R1-40 to R2-25 district, certain parcels of land located on the north and south side of John Road designated as part of permanent parcel Nos. 262-5-2 and 262-5-1 of Cuyahoge County maps."

The Board of Elections found objection in the petition because of the inclusion of the third paragraph under the title "Resolution A-74." The Board quite correctly notes that this independent portion of the resolution was not recommended for approval by the Zoning Commission, and hence was not adopted by Township Board of Trustees.

The Board argues that the language of the petition therefore misrepresented the issues before the public and rendered the petitions insufficient.

The relators contend that this is not the case. They maintain that they have complied with the requirements for referendum petitions under R. C. 519.12 by setting forth the applicable title and resolution number. They further assert that, as a matter of law, setting forth the correct title of an amendment to be referred to the voters, could not be misleading.

Provisions for referendum of decisions of the Township Board of Trustees upon zoning is made in R. C. 519.12. As noted in *Sidwell* v. *Clepper* (1970), 25 Ohio Misc. 104, 109, "the requirements on this petition are not spelled out in R. C. 519.12 * * *." Though this deficiency is one which calls for correction by the legislature, until such time as it sees fit to act the courts must look to the statutory scheme and the intent of the legislature to fill the void. *See Note, Township Zoning Referenda; Sufficiency of Contents of Petition*, 33 Ohio St. L. J. 144 (1972).

By constitutional requirement referendum petitions for statewide issues must "contain a full and correct copy of the title and text of the law, section or item thereof sought to be referred, or the proposed law or proposed amendment to the constitution." Section lg. Art. II. The provisions under R. C. 731.31, pertaining to initiative and referendum petitions on municipal issues provide that "each part of any referendum petition shall contain the number and a full and correct copy of the *title* of the ordinance or other measure sought to be referred." (Emphasis added.) But as noted above, R. C. 519.12 pertaining to referendum petitions for zoning amendments of township and R. C. 303.12 pertaining to referendum petitions for zoning amendments of counties, provide no indication as to the standards to be applied in measuring the sufficiency of referendum petitions filed pursuant thereto.

The only reported case in which a court faced the issues currently before this court is that of *Sidwell v. Clepper, supra.* In *Sidwell* the first page of the referendum pe-

tition stated that a referendum was sought upon "Amendment No. 5" of the "Union Township Zoning Regulations." The second page of each petition contained an exact copy of that amendment. After noting the lack of standards under R. C. 519.12 the court indicated that the petitions "should be sufficient for the parties to understand what they are signing * * *." *Sidwell* v. *Clepper, supra,* at 109. The court proceeded to hold that the petitions in that case were adequate and declared that the board of elections should place the issue upon the ballot.

Another case considering these same issues is *Pioneer Development & Resources Corp.* v. *Delaware Cty. Bd. of Elections* (Delaware Cty. Ct. App. April 14, 1971), No. 464, *appeal denied* (Ohio Supreme Court September 29, 1971), No. 71-541. The court's treatment of the matter was summarized in Note, *Township Zoning Referenda; Sufficiency of Contents of Petition, supra,* as follows:

"* * * the court assumed the burden of developing its own standard of sufficiency by drawing an analogy between §519.12 and §731.31, which sets forth the standards required of referendum petitions for municipal ordinances. Since §731.31 requires that a petition seeking to have a municipal ordinance referred need only 'contain the number and a full and correct copy of the title of the ordinance or measure sought to be referred,' the *Pioneer* court concluded:

" 'Thus, it would seem by analogy that under the provisions of Section 519.12, Revised Code, only the amendment or supplement to be referred to the voters need be sufficiently designated without the necessity of setting forth the text thereof. *In the instant case the referendum petition sets forth the date the amendment or supplement was adopted by the Board of Trustees and quotes verbatum the minutes of the Board by which such change of zoning was adopted.'*

"Therefore, the *Pioneer* court held that a zoning referendum petition is sufficient if a single reference to the minutes of the meeting at which the board of trustees approved the amendment is made." (Footnotes omitted.)

Finally, in *Markus* v. *Bd. of Elections* (1970), 22 Ohio

St. 2d 197, consideration was given by the Supreme Court to a R. C. 519.12 zoning referendum petition. While the court did not spell out specific criteria for such petitions it did point out that the procedures under R. C. 3501.38 *are* applicable. Further, the court set forth principles in that case which have applicability to all R. C. 519.12 petitions. It stated that the courts have a duty to preserve the "integrity" of the right of referendum and found fault with the petition in that case because they "could have substantially misled those persons who signed them." *Id.*, at 200. Similarly, the court found that judicial intervention was justified because the "petitions failed to contain an accurate and unambiguous statement of the issue sought to be submitted to the electorate." *Id.*, at 202. Subsequently, in *dictum* in *State, ex rel. Polcyn,* v. *Burkhart* (1973), 33 Ohio St. 2d 7, 11, the court indicated that:

"The 'test,' regarding alleged textual deficiencies in petitions such as the one at bar, was stated in *Markus* v. *Bd. of Elections* (1970), 22 Ohio St. 2d 197, 259 N. E. 2d 501. That case held that the text 'must fairly and accurately present the question or issue to be decided in order to assure a free, intelligent and informed * * *[decision] by the average citizen affected.' "

Upon careful consideration of these cases, the relevant statutes and the public interest to be furthered, we hold that the following are requirements for a R. C. 519.12 referendum:

(1) The petition must contain the number and a full and correct title of the zoning resolution;

(2) The petition must contain the affidavit of the person soliciting signatures for the petition certifying that to the best of his or her knowledge and belief each of the signatures is that of the person whose name it purports to be, that he believes such persons are electors of the township, and that such persons signed the petition with knowledge of its contents; and

(3) If the petition contains any additional information it must be of such a character as to promote the attempt to fairly and accurately present the question or issue and must

not in any way detract from a free, intelligent and inform-
ed choice by the average citizen who is requested to make
a decision as to whether he should or should not sign such
a petition.

In the case at bar relators' petitions were defective for
failure to comply with requirements one and three above.

There is no question that the petitions in question con-
tained the applicable resolution number. But they did not
properly set forth the correct title of the resolution. "Title,"
in this context, is properly defined as follows:

"* * * the title of a statute is the heading or prelimi-
nary part, furnishing the name by which the act is individ-
ually known. It is usually prefixed to the statute in the
form of a brief summary of its contents; as 'An act for
the prevention of gaming.'" *Black's Law Dictionary* (4th
ed. 1951).

As we have previously noted the documents present-
ed to the Township Board of Trustees are constructed in
such a manner as to more properly constitute four separate
resolutions, each with its own title. For reasons not dem-
onstrated by the record those documents were combined
into one unified resolution without the benefit of a unified
title which would encompass all four proposed zoning
changes.

Under these circumstances this court can certainly
appreciate the dilemma in which the relators may have
found themselves in attempting to determine the title of
the resolution. Because there was no general title for Re-
solution A-74, and in view of the existence of four sub-
titles, one for each of the proposed changes, we hold that
the correct title of the entire resolution consists of the three
sub-titles of each of the proposals which would take effect,
absent any adverse decision by the voters in a referendum.[3]
The proper title would therefore read as follows:

[3]In their argument that they were required to use all four sub-titles
in order to correctly state the title of Resolution A-74, the relators
rely on 1957 O. A. G. No. 255, p. 77. Such reliance is misplaced. That
opinion simply states that a referendum cannot be had upon only
one part of a zoning ordinance *which was* enacted.

## "RESOLUTION A-74

"A resolution to amend the zone map of the unincorporated area of Olmsted Township, Ohio, which is a part of Resolution No. 1-52, adopted the 20th day of July, 1952 and amendments thereto, by changing the zoning to establish the following zoning district: To change from residential R1-40 to RMF-A district certain parcels of land located on the north and south side of John Road designated as part of permanent parcel Nos. 262-5-2 and 262-5-1 of Cuyahoga County maps.

"A resolution to amend the zone map of the unincorporated area of Olmsted Township, Ohio, which is a part of Resolution No. 1-52, adopted the 20th day of July, 1952; and amendments thereto, by changing the zoning to establish the following zoning district: to change from residential R1-40 to RMF-T district certain parcels of land located on the north and south side of John Road designated as part of permanent parcel Nos. 262-5-2 and 262-5-1 of Cuyahoga County maps.

"A resolution to amend the zone map of the unincorporated area of Olmsted Township, Ohio, which is a part of Resolution No. 1-52, adopted the 20th day of July, 1942, and amendments thereto, by changing the zoning to establish the following zoning district: to change from residential R1-40 to R2-25 district, certain parcels of land located on the north and south side of John Road designated as part of permanent parcel Nos. 262-5-2 and 262-5-1 of Cuyahoga County maps."

Since the referendum petitions circulated by the relators contained the additional paragraph involving the proposal for rezoning land to local business use which was not adopted as part of Resolution A-74, by the Olmsted Township Board of Trustees, we find that the petitions failed to state the correct title of the resolution.

Second, we find that a fair reading of the statement contained on page one of the referendum petitions by the inclusion of paragraph three under the heading "Resolution A-74" and the impression conveyed that all four paragraphs represented the title of a zoning amendment which had

been adopted, can lead to only one conclusion: that paragraph three of the purported title represented a portion of a zoning amendment that had rezoned part of the golf course property to a local business use. This was an incorrect representation. If the relators chose to include the paragraph in question anywhere in the petitions, they were required to clearly and unambiguously indicate on the face of the petition that the specific portion of the orginal amendment had not been adopted by the Olmsted Township Board of Trustees, in order to comply with *Markus* v. *Bd. of Elections, supra,* and hence be entitled to have the referendum issue placed upon the ballot. Because of their failure to do so, we hold that the statements contained in the referendum petitions did not fairly and accurately present the question; that it could have substantially misled those persons who signed the petitions; and that it detracted from a free, intelligent and informed choice.

For these reasons, we conclude that the relators do not have a clear right to require the Board of Elections to place the referendum on the ballot. Accordingly, we deny the petition for writ of mandamus.

DAY and CORRGIAN, JJ., concur.

DAY, J., concurring. In this case the Board of Elections had already acted on relators' effort to get an issue on the ballot when the Mandamus petition was filed. That Board action effectively blocked any legally justifiable recourse to Mandamus.

However, the relator attempted to use the writ to force the Board to act in a particular way. Mandamus relief would invade a discretionary area which Mandamus cannot reach. Moreover, the granting of the writ in such circumstances would effect appellate review of a substantive and discretionary exercise of the Board's powers and result in a violation of the fundamental proposition that Mandamus is not a substitute for appeal.

Accordingly, I agree with the action of the majority in denying the petition for Mandamus, but for different reasons.