**[This opinion has been published in *Ohio Official Reports* at 90 Ohio St.3d 165.]**

THE STATE EX REL. BAUR ET AL. *v.* MEDINA COUNTY BOARD OF ELECTIONS ET

AL.

[Cite as *State ex rel. Baur v. Medina Cty. Bd. of Elections*, 2000-Ohio-49.]

*Elections—Prohibition—Writ sought to prohibit Medina County Board of*

*Elections et al. from submitting referendum on Ordinance No. 99-048 to*

*electors at the November 7, 2000 general election—Writ denied, when.*

(No. 00-1534—Submitted September 20, 2000—Decided September 22, 2000.)

IN PROHIBITION.

_____

{¶ 1} Relators are seven taxpayers and residents of the city of Wadsworth, Ohio. They own property in the city that is designated as lots 6753, 6754, 6755, and 6756. On August 3, 1999, the City Council of Wadsworth passed Ordinance No. 99-048, which would rezone these lots from the R-4 Residential Zoning District to the C-3 Commercial Zoning District.

{¶ 2} A group of petitioners circulated a referendum petition on Ordinance No. 99-048 that included the following language:

"We, the undersigned, electors of the City of Wadsworth, Ohio, respectfully order that Ordinance No. 99-048, passed by the Council of this city * * * on the 3rd day of August, 1999, be submitted to the electors of such city * * * for their approval or rejection at the general election to be held on the 2nd day of November, 1999."

{¶ 3} The referendum petitioners understood that under the time limits of R.C. 731.29, they might not be able to gather signatures and file the petition in time for the ordinance to be submitted to electors at the November 2, 1999 general election. The petitioners nevertheless followed the advice of an official of respondent Medina County Board of Elections, who had contacted the office of the

Secretary of State of Ohio, and specified the November 2, 1999 election date on the petition.

{¶ 4} On September 1, 1999, sixty-two days before the November 2, 1999 general election, the petitioners filed the referendum petition with the Wadsworth City Auditor. On September 16, 1999, relators filed a written protest with respondent Medina County Board of Elections, seeking to invalidate the referendum petition. Relators claimed that the petition was invalid because (1) R.C. 731.29 prohibited the submission of the ordinance to the electors at the November 2, 1999 general election, (2) permitting the issue to be voted on at the 2000 general election would violate election laws when the petition specified the November 2, 1999 general election, (3) changing the election date to the 2000 general election would operate as a constructive fraud on petition signers to whom the petition had misrepresented the date, and (4) the petition contained illegible signatures and incorrect addresses. In its initial R.C. 731.29 determination, the board found that the petition contained at least seven hundred two valid signatures, which were substantially more than the five hundred forty-eight signatures necessary to submit the issue to the electors, and returned the petition to the auditor. On May 10, 2000, the city auditor determined that the referendum petition was sufficient and transmitted the petition to the board.

{¶ 5} On May 12, 2000, relators filed a renewed protest with the board, restating their previous protest and further contending that "[s]ince the City's resubmission is clearly past the date for the referendum election expressly stated in the referendum petition, placing this matter on the ballot would be contrary to Ohio law." On July 21, 2000, the board held a hearing on relators' protest and in effect denied it by ordering that the ordinance be submitted to the electors for their approval or rejection at the November 7, 2000 general election. In holding that the claimed defects did not invalidate the petition, the board relied upon the advice of the Secretary of State and the Medina County Prosecuting Attorney.

{¶ 6} Over one month later, on August 24, 2000, relators filed this action for a writ of prohibition to prevent respondents, the board, its director, and its members, from proceeding with the referendum vote on Ordinance No. 99-048 at the November 7, 2000 general election. Before being served with the complaint, the board sent information to initiate preparation of the November 7, 2000 election ballots. Respondents filed an answer, and the parties filed evidence and briefs pursuant to the expedited schedule set forth in S.Ct.Prac.R. X(9).

———————————

*Calfee, Halter & Griswold, L.L.P.*, *Albert J. Lucas* and *Peter A. Rosato*, for relators.

*Dean Holman*, Medina County Prosecuting Attorney, and *William L. Thorne*, Assistant Prosecuting Attorney, for respondents.

———————————

***Per Curiam.***

{¶ 7} Relators request a writ of prohibition to prevent respondents from submitting the referendum to the electors. In extraordinary actions like prohibition challenging the quasi-judicial decision of a board of elections, "the applicable standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions." *State ex rel. Crossman Communities of Ohio, Inc. v. Greene Cty. Bd. of Elections* (1999), 87 Ohio St.3d 132, 135-136, 717 N.E.2d 1091, 1095.

{¶ 8} Relators contend that they are entitled to the requested extraordinary relief to prevent the submission of Ordinance No. 99-048 to the electors because the board abused its discretion and acted in clear disregard of applicable law by denying their protest and placing the referendum issue on the November 7, 2000 election ballot. More specifically, relators initially assert that the petitioners submitted an invalid petition when they specified a date for the referendum vote,

*i.e.*, November 2, 1999, that made compliance with the timing requirements of R.C. 731.29 impossible.

{¶ 9} R.C. 731.29 provides the following requirements for municipal ordinances or other measures subject to referendum:

"When a petition, signed by ten per cent of the number of electors who voted for governor at the most recent general election for the office of governor in the municipal corporation, is filed with the city auditor * * * within thirty days after any ordinance or other measure is filed with the mayor * * * ordering that such ordinance or measure be submitted to the electors of such municipal corporation for their approval or rejection, such auditor * * * shall, after ten days, and not later than four p.m. of the seventy-fifth day before the day of the election, transmit a certified copy of the text of the ordinance or measure to the board of elections. The auditor * * * shall transmit the petition to the board together with the certified copy of the ordinance or measure. The board shall examine all signatures on the petition to determine the number of electors of the municipal corporation who signed the petition. The board shall return the petition to the auditor * * * within ten days after receiving it, together with a statement attesting to the number of such electors who signed the petition. *The board shall submit the ordinance or measure to the electors of the municipal corporation, for their approval or rejection, at the next general election occurring subsequent to seventy-five days after the auditor * * * certifies the sufficiency and validity of the petition to the board of elections.*" (Emphasis added.) See, also, R.C. 3501.02(F) ("Any question or issue, except a candidacy, to be voted upon at an election shall be certified, for placement upon the ballot, to the board of elections not later than four p.m. of the seventy-fifth day before the day of the election.").

{¶ 10} Under R.C. 731.29, by the September 1, 1999 date that the petitioners filed their petition with the city auditor, it was too late for the board to submit Ordinance No. 99-048 to the Wadsworth electors at the November 2, 1999

general election specified in the petition because that election was less than seventy-five days away. In addition, because R.C. 731.29 requires a ten-day period in which the petition must remain with the auditor, any filing date less than eighty-five days before the election would be too late.

{¶ 11} The board, however, was authorized by R.C. 731.29 to submit the ordinance to the electors at the next general election occurring more than seventy-five days after the May 10, 2000 certification by the auditor of the sufficiency and validity of the petition, *i.e.*, the November 7, 2000 general election.

{¶ 12} In addition, notwithstanding relators' contentions to the contrary, the mere fact that the referendum petition designated an election date that was ultimately determined to be inappropriate does not entitle relators to extraordinary relief barring the election. In resolving a similar issue, the Court of Appeals for Medina County held that a referendum petition on township resolutions that contained an incorrect election date did not invalidate the petition:

"Nor is the error in the election date a fatal defect. The actual designation of the date of election is a matter determined by operation of law, and cannot be altered by the circulators of a petition. *Nunneker v. Murdock* (1983), 9 Ohio App.3d 73, 77 [9 OBR 93, 97, 458 N.E.2d 431, 435]. * * * We find no statute requiring that a petition for referendum exactly state the date on which the proposed issues will be presented to the voters, nor do appellants refer us to any." *Sukenik v. Medina Cty. Bd. of Elections* (July 11, 1990), Medina App. No. 1855, unreported, 1990 WL 99940.

{¶ 13} In effect, under R.C. 731.29, the determination of the date of the election for a valid petition for referendum of a municipal ordinance is a mechanical, administrative matter, and error concerning the date is not fatal to the referendum. *Id.*; see, also, *Nunneker*, 9 Ohio App.3d 73, 9 OBR 93, 458 N.E.2d 431, in which the appellate court held, in construing the referendum requirements

of R.C. 303.12, that the failure of a referendum petition to specify the date of the election was not fatal.

{¶ 14} Relators rely on language in *Nunneker* in which the court of appeals stated that if it "would be too late for the issue to be submitted at the designated election" stated in the petition, "the issue would be lost forever."  9 Ohio App.3d at 76, 9 OBR at 96, 458 N.E.2d at 435, fn. 4.  But this language in *Nunneker* is mere dicta, is not supported by any persuasive authority, and is contrary to its holding that the date is merely a mechanical matter that is fixed by operation of law rather by than the petitioners.

{¶ 15} Relators next contend that the referendum petition is defective because the petitioners misrepresented the date of the election when they specified November 2, 1999, as the election date, in violation of R.C. 731.36(A) and 3599.14(A)(1).  R.C. 731.36 provides that "[n]o person shall, directly or indirectly * * * [w]illfully misrepresent the contents of any * * * referendum petition."  R.C. 3599.14(A) provides that "[n]o person shall knowingly, directly or indirectly, * * * (1) [m]isrepresent the contents, purpose, or effect of the petition * * * for the purpose of persuading a person to sign or refrain from signing the petition."

{¶ 16} Relators' contention is meritless.  The record is devoid of evidence of a willful or knowing misrepresentation of the election date by the referendum petitioners or any purpose on their part, by including the 1999 election date, to persuade persons to sign the petition.  Instead, according to the evidence introduced at the protest hearing, they put the November 2, 1999 date on their petition upon the advice of a board official, and one circulator testified that he  explained to electors that the actual election would be in 2000 rather than 1999.

{¶ 17} Moreover, the referendum petition fully complied with the R.C. 731.31 requirement that each part of the petition contain "a full and correct copy of the title of the ordinance or other measure sought to be referred."  See, *e.g., State*

*ex rel. Hazel v. Cuyahoga Cty. Bd. of Elections* (1997), 80 Ohio St.3d 165, 167-168, 685 N.E.2d 224, 226-227. Unlike the petitions in the cases cited by relators, the referendum petition here did not convey a confusing or mistaken impression about the substance of the zoning ordinance that was the subject of the petition. Cf. *State ex rel. O'Beirne v. Geauga Cty. Bd. of Elections* (1997), 80 Ohio St.3d 176, 180, 685 N.E.2d 502, 505-506; *Markus v. Trumbull Cty. Bd. of Elections* (1970), 22 Ohio St.2d 197, 51 O.O.2d 277, 259 N.E.2d 501; *State ex rel. Schultz v. Cuyahoga Cty. Bd. of Elections* (1976), 50 Ohio App.2d 1, 4 O.O.3d 1, 361 N.E.2d 477, affirmed (1976), 48 Ohio St.2d 173, 2 O.O.3d 372, 357 N.E.2d 1079.

{¶ 18} Further, evidence of a violation of R.C. 731.36(A) or 3599.14(A)(1) would not have invalidated the referendum petition. See, *e.g., State ex rel. Fite v. Aeh* (1997), 80 Ohio St.3d 1, 5, 684 N.E.2d 285, 288, citing *Gem Dev. Co. v. Clymer* (1963), 120 Ohio App. 189, 191, 28 O.O.2d 463, 464, 201 N.E.2d 721, 722. Instead, the General Assembly specifies fines for violations of R.C. 731.36(A) and criminal sanctions for violations of R.C. 3599.14(A)(1). R.C. 731.99(A) and 3599.14(B).

{¶ 19} In sum, relators are not entitled to prevent the submission of the issue to the electorate. All of the mandatory statutory requirements have been satisfied. Cf. *Cincinnati v. Hillenbrand* (1921), 103 Ohio St. 286, 133 N.E. 556, paragraph two of the syllabus ("where the mandatory provisions of the constitution or statute prescribing the necessary preliminary steps to authorize the submission to the electors of an initiative statute or ordinance have been complied with the submission will not be enjoined"). This conclusion comports with our duties to liberally construe municipal referendum petitions to permit rather than to preclude the exercise of the power of referendum and to accord weight to the Secretary of State's apparent view that the referendum petition's inclusion of the 1999 election date did not invalidate the petition. See *Christy v. Summit Cty. Bd. of Elections*

(1996), 77 Ohio St.3d 35, 40, 671 N.E.2d 1, 5; *State ex rel. Sinay v. Sodders* (1997), 80 Ohio St.3d 224, 228-229, 685 N.E.2d 754, 758.

**{¶ 20}** Based on the foregoing, respondents neither abused their discretion nor clearly disregarded applicable law in denying relators' protest and placing the referendum issue on the November 7, 2000 election ballot. Therefore, we deny the writ.[1]

*Writ denied.*

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

———————————

1. By so holding, we find it unnecessary to address respondents' claim that laches bars the action.