**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. McGinn v. Walker,* Slip Opinion No. 2017-Ohio-7714.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2017-OHIO-7714

THE STATE EX REL. MCGINN ET AL. *v.* WALKER ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. McGinn v. Walker,* Slip Opinion No. 2017-Ohio-7714.]**

*Mandamus—Writs of mandamus sought to compel boards of elections to certify initiative petitions to ballot—Writs denied.*

(No. 2017-1164—Submitted September 19, 2017—Decided September 21, 2017.)

IN MANDAMUS.

————————

**Per Curiam.**

{¶ 1} In this expedited election matter, relators, the members of the Athens County and Medina County Committees of Petitioners,[1] seek writs of mandamus

_____

[1] The "Athens Committee" consists of relators Richard McGinn, John Howell, Saraquoia Bryant, Sally Jo Wiley, and Margaret Hummon. The "Medina Committee" consists of relators Katharine S. Jones, Gerald T. Dolcini, Lynn Kemp, Georgia Kimble, and Sharon L. Kiesel.

to compel respondents, their respective county boards of elections,[2] to certify initiative petitions to the November ballot. We deny the request for writs.

*Background*

{¶ 2} The Athens Committee submitted a petition to the Athens County Board of Elections proposing the adoption of a county charter. The proposed charter created an "Executive Council" consisting of seven elected officials.[3] The Executive Council would have the power to propose ordinances and resolutions for consideration by the county commission, as well as the authority to approve or veto ordinances approved by the commission.

{¶ 3} On July 10, 2017, the Athens County Board of Elections voted unanimously not to certify the petition to the November 2017 general election ballot. The board of elections conceded that the petition contained sufficient valid signatures but rejected the petition, stating:

> [W]e find that the petition is not a valid charter. R.C. 302.02 mandates that an alternative form of county government "shall include either an elective county executive or an appointive county executive."

{¶ 4} Also on July 10, the Medina County Board of Elections voted three to one not to certify a ballot petition submitted by the Medina Committee. The Medina County Board of Elections found that the petition contained sufficient valid signatures, but it concluded that the petition was invalid, stating:

---

[2] The complaint also names the individual board members as respondents: Helen Walker, Kate McGuckin, Ken Ryan, and Aundrea Carpenter-Colvin in Athens County, and Pamela B. Miller, Larry G. Cray, John V. Welker Jr., and Sharon A. Ray, in Medina County.

[3] The county auditor, county treasurer, county engineer, county recorder, county coroner, county clerk of courts, and county sheriff.

The proposed county charter does not adequately provide for an alternative form of county government, and it contains provisions that are outside of the initiative power because they are not within a county authority to enact.

**{¶ 5}** On August 1, 2017, the two committees filed protests against the board decisions with the Ohio secretary of state. However, on August 14, 2017, the secretary of state declined to rule on the protests. The secretary reasoned that R.C. 307.94 offers two mutually exclusive avenues for challenging a county-board-of-elections decision: either file a protest or file an action in the common pleas court. And because (according to the secretary), the common pleas courts in Athens and Medina County had already affirmed the decisions of their respective boards, the committees could not pursue a statutory protest.

**{¶ 6}** On August 21, 2017, the committees commenced the present action for writs of mandamus. The parties filed briefs and evidence in accordance with the calendar for expedited election cases in S.Ct.Prac.R. 12.08. We also received two amicus briefs in support of the respondent boards of elections, one from the Affiliated Construction Trades Ohio Foundation, the Ohio Chamber of Commerce, the National Association of Royalty Owners, and the American Petroleum Institute, and the other from the Ohio Farm Bureau Federation.

*Governing law*

**{¶ 7}** The Ohio Constitution, Article X, Section 3, authorizes the voters in a county to frame and adopt or amend a charter. The process begins with the submission of a petition proposing the form of a county charter to the county board of elections. R.C. 307.94. The board of elections must immediately "determine whether the petition and the signatures on the petition meet the requirements of law." *Id*. "If the petition is certified by the board of elections to be valid and to have sufficient valid signatures," then the county board of commissioners must, by

resolution, certify the petition to the board of elections for submission to the electors at the next general election. *Id.*

**{¶ 8}** Thus, R.C. 307.94 imposes a duty on the county elections boards to assess the "validity" of petitions. That duty was echoed in R.C. 3501.11(K), which, prior to April 6 of this year, simply stated that a county board must "[r]eview, examine, and certify the sufficiency and validity of petitions." 2013 Am.Sub.S.B. 109.

**{¶ 9}** Our prior rulings have explained what a board of elections may and may not consider when determining whether a petition is "valid" or "invalid." Election officials can declare a proposed initiative invalid if the measure fails to satisfy the statutory or constitutional prerequisites for a ballot measure. *See, e.g., State ex rel. Walker v. Husted*, 144 Ohio St.3d 361, 2015-Ohio-3749, 43 N.E.3d 419, ¶ 24 (secretary of state had authority to invalidate charter petitions that did not "set forth the form of government," as required by Article X, Section 3 of the Ohio Constitution, "the sine qua non of a valid charter initiative"); *State ex rel. Choices for South-Western City Schools v. Anthony*, 108 Ohio St.3d 1, 2005-Ohio-5362, 840 N.E.2d 582, ¶ 39, 50-55) (board of elections did not abuse its discretion when it rejected a petition that would *repeal* a tax levy, because the authorizing statute provided only for ballot measures to *decrease* tax levies).

**{¶ 10}** "But this authority [of elections boards] to determine whether a ballot measure falls within the scope of the constitutional power of referendum (or initiative) does *not* permit election officials to sit as arbiters of the legality or constitutionality of a ballot measure's substantive terms." (Emphasis sic). *Walker* at ¶ 15. In other words, an elections board could not invalidate a proposed measure that it believed would be unlawful or unconstitutional "in its effects" if approved. *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections*, 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, ¶ 12.

4

**{¶ 11}** With the enactment of 2016 Sub.H.B. No. 463, effective April 6, 2017 ("H.B. 463"), the General Assembly purported to expand the review authority of county elections boards, specifically in regard to county-charter petitions. County elections boards must now

> [e]xamine each initiative petition, or a petition filed under section 307.94 or 307.95 of the Revised Code, received by the board to determine whether the petition falls within the scope of authority to enact via initiative and whether the petition satisfies the statutory prerequisites to place the issue on the ballot, as described in division (M) of section 3501.38 of the Revised Code. The petition shall be invalid if any portion of the petition is not within the initiative power.

R.C. 3501.11(K)(2).  H.B. 463 also added the following provision:

> (1) Upon receiving an initiative petition * * *concerning a ballot issue that is to be submitted to the electors of a county * * *, the board of elections shall examine the petition to determine:
> * * *
> (b) Whether the petition falls within the scope of a county's authority to enact via initiative, including whether the petition conforms to the requirements set forth in Section 3 of Article X of the Ohio Constitution, including the exercise of only those powers that have vested in, and the performance of all duties imposed upon counties and county officers by law, and whether the petition satisfies the statutory prerequisites to place the issue on the ballot.

The finding of the board shall be subject to challenge by a protest

filed pursuant to division (B) of section 307.95 of the Revised Code.

R.C. 3501.38(M). The committees have preemptively challenged the constitutionality of these statutory amendments.

*Legal analysis*

**{¶ 12}** When reviewing a county-board-of-elections decision, the standard is whether the board engaged in fraud or corruption, abused its discretion, or acted in clear disregard of applicable legal provisions. *State ex rel. Jacquemin v. Union Cty. Bd. of Elections*, 147 Ohio St.3d 467, 2016-Ohio-5880, 67 N.E.3d 759, ¶ 9.

**{¶ 13}** The boards have presented three justifications for their having found the petitions invalid: (1) the proposed county charters do not adequately provide for an alternative form of county government, (2) they contain provisions that are outside the initiative power because they are not within a county's authority to enact, and (3) they fail to provide for the exercise of all powers and duties of county government. We find the third claim to be dispositive.

**{¶ 14}** The Ohio Constitution mandates that a charter must "provide for the exercise of all powers vested in, and the performance of all duties imposed upon counties and county officers by law." Ohio Constitution, Article X, Section 3. Even under pre-H.B. 463 law, a county elections board had authority to determine whether a proposed charter petition satisfied this constitutional prerequisite. *State ex rel. Coover v. Husted*, 148 Ohio St.3d 332, 2016-Ohio-5794, 70 N.E.2d 587, ¶ 11.

**{¶ 15}** Whether a board's decision is substantively correct is a different question. Our decisions have established that overly general references to the powers and duties of county officials will not suffice. *Id*. at ¶ 16-17. Proposed charters do not satisfy Article X, Section 3 of the Ohio Constitution if "[o]ne must look to sources outside the proposed charters to determine the form of government

they purport to establish." *Walker*, 144 Ohio St.3d 361, 2015-Ohio-3749, 43 N.E.3d 419, ¶ 23.

{¶ 16} The Athens County charter petition is nearly indistinguishable from the language we rejected in *Walker* and *Coover*. The Athens County charter provides for the election of eight county officials: auditor, treasurer, prosecuting attorney, engineer, recorder, coroner, sheriff, and clerk of courts. In each case, the charter provides that the official "shall be elected, and the duties of that office, and the compensation therefore, shall continue to be determined in the manner provided by general law." This is the same language we deemed inadequate in *Coover*.

{¶ 17} The proposed charter for Medina County is different. Article III sets forth in detail the powers and duties of the board of county commissioners, the county auditor, the county treasurer, the county prosecuting attorney, the county engineer, the county recorder, the county sheriff, the clerk of courts, and the county coroner. The Medina County Board of Elections asserts that the enumerated list of duties for these offices is "incomplete," but it fails to identify even one official power or duty that has been omitted from the charter. However, the amicus brief from the Ohio Farm Bureau Federation *does* identify gaps in the charter.

{¶ 18} R.C. 309.08(A) defines the powers and duties of a county prosecuting attorney. It requires or permits the county prosecuting attorney to

- inquire into the commission of crimes within the county,

- prosecute, on behalf of the state, all complaints, suits, and controversies in which the state is a party (with some exceptions) or that the prosecuting attorney is required by law to prosecute,

- in cases of conviction, forthwith cause execution to issue for the fines and costs, and faithfully urge collection until it is effected or found to be impracticable,

- pay to the county treasurer all state or county money that comes into the prosecuting attorney's possession, and

- participate in organized-crime-task-force investigations.

The proposed charter for Medina County incorporates all of these duties in Article III, Section 3.5.3. In addition, Section 3.5.3(1) requires the county prosecuting attorney to secure a bond, a requirement under R.C. 309.03. And Section 3.5.3(7) requires the county prosecuting attorney to maintain a delinquent-tax-and-assessment-collection fund and submit a report regarding use of the money to the county commissioners, mirroring the requirements in R.C. 321.261(A) and (C).

{¶ 19} However, as the Farm Bureau points out, the Revised Code includes duties and powers that do *not* have counterparts in the proposed charter. Perhaps the most significant is that by statute, the county prosecuting attorney "shall be the legal adviser of the board of county commissioners, board of elections, all other county officers and boards, and all tax-supported public libraries." R.C. 309.09(A). In addition to defending those officials and entities in litigation, the prosecuting attorney must, upon request, provide them with written opinions or instructions "in matters connected with their official duties." *Id.* The proposed charter for Medina County does not impose this duty upon the county prosecuting attorney, and the committee has not identified another official to whom these responsibilities have been transferred.

{¶ 20} The county prosecuting attorney is also authorized by state statute to pay a reward to persons who provide drug-related tips to law enforcement out of a number of different funds. R.C. 309.08(B). The proposed charter for Medina County contains no equivalent grant of authority.

{¶ 21} Finally, a county prosecuting attorney has authority under state law to bring suit on behalf of the state to prevent the misappropriation of county funds or public money in the hands of the county treasurer. R.C. 309.12. The proposed charter for Medina County contains no equivalent grant of authority.

{¶ 22} The Medina committee invokes a catch-all provision allegedly in Section 2.1. Section 2.1 of the proposed charter for *Athens* County states, "When not prescribed by the Charter or by amendment to this Charter, by local law enacted by the County Commissioners, or by local law enacted by the people, [all powers exercised by the people through their county government] shall be exercised in the manner prescribed by the Constitution of Ohio or by general law." But that language does not appear in Section 2.1 of the proposed charter for Medina County.

{¶ 23} The constitutional language is clear: a county charter must provide for the exercise of *all* powers, and the performance of *all* duties, imposed on counties and county officers by law. Ohio Constitution, Article X, Section 3. The proposed charter for Medina County comes close, but it does not satisfy the requirement. For this reason, the boards did not abuse their discretion when they invalidated the petitions.

{¶ 24} Because the boards were justified in finding the petitions invalid, and because that issue is dispositive, it is unnecessary for us to consider the alternative justifications offered by the boards for refusing to certify the petitions to the ballot. And because we hold that the boards had the authority to find these petitions invalid under pre-H.B. 463 law, we need not address the constitutionality of the statutory amendments. *In re Application of Champaign Wind, L.L.C.*, 146 Ohio St.3d 489, 2016-Ohio-1513, 58 N.E.3d 1142, ¶ 48, quoting *State ex rel. DeBrosse v. Cool*, 87 Ohio St3d 1, 7, 716 N.E.2d 1114 (1999) (" 'Courts decide constitutional issues only when absolutely necessary' ").

{¶ 25} The committees have failed to establish a clear legal duty on the part of the boards of elections to place the charter petitions on the ballot, and we therefore deny the petition for a writs of mandamus.

Writs denied.

O'CONNOR, C.J., and FRENCH, J., concur.

O'DONNELL and KENNEDY, JJ., concur in judgment only.

DEWINE, J., concurs in judgment only, with an opinion.

FISCHER, J., dissents, with an opinion joined by O'NEILL, J.

_____

**DEWINE, J., concurring in judgment only.**

{¶ 26} I concur in the majority's judgment denying the writs of mandamus. But I find it unnecessary for this court to review the content of the proposed charters; instead, I would deny the writs because relators have an adequate remedy at law.

{¶ 27} Relators ask the court to issue a writ of mandamus to compel their respective county boards of elections to certify initiative petitions to the November ballot. It is fundamental that an extraordinary writ of mandamus may be issued only when a party lacks an adequate remedy at law. *See, e.g.*, *State ex rel. Lewis v. Moser*, 72 Ohio St.3d 25, 28, 647 N.E.2d 155 (1995).

{¶ 28} Ohio law provides two legal remedies to challenge a board's refusal to certify initiative petitions. *See* R.C. 307.94. The petitioners may file a protest with the secretary of state pursuant to R.C. 307.95, *or* they may request that the board establish the validity or invalidity of the petition before the county common pleas court. Both procedures provide an expedited timeline for resolution.

{¶ 29} Here, relators chose to proceed by way of actions in common pleas court.[4] After having been unsuccessful in common pleas court, they appealed to their respective courts of appeals. The matters have been fully briefed.

{¶ 30} Relators suggest that the remedy is not adequate because the courts of appeals might not rule before the deadline for the printing of ballots. But relators had the choice of two remedies; they chose to pursue an expedited challenge in the

_____

[4] After the initiation of the common pleas court actions, relators sought to file election protests. The secretary of state declined to rule on the protests on the basis that R.C. 307.94 provides mutually exclusive avenues for relief and the common pleas courts had already affirmed the decisions of their respective boards.

court of common pleas with its concomitant right of appeal rather than file a protest with the secretary of state from which they could have sought review in mandamus, *see, e.g.*, *State ex rel. Coover v. Husted*, 148 Ohio St.3d 332, 2016-Ohio-5794, 70 N.E.2d 587, ¶ 3-4. Having chosen their remedy—and having already received one level of legal review—they can hardly complain about the appeals process that was part of the remedy they chose.

**{¶ 31}** I would hold that the procedures set forth in R.C. 307.94 constitute an adequate remedy at law and deny the writs on that basis. Relators have already obtained legal review of the decisions of the boards of elections in common pleas court. In addition, they have pending appeals. There is no reason to think that those courts of appeals are not as equipped as this court to decide these matters in an expeditious fashion. (And I worry that when we fail to enforce the no-adequate-remedy-at-law requirement, we give lower courts an incentive to delay resolving these kinds of appeals and to rely on this court to decide election matters.)

**{¶ 32}** Because there is an adequate remedy at law, I would deny the request for writs of mandamus.

_____

**FISCHER, J., dissenting.**

**{¶ 33}** In *State ex rel. Walker v. Husted*, we held that elections officials do not have the authority "to sit as arbiters of the legality or constitutionality of a ballot measure's substantive terms" because that authority is reserved for the judiciary. 144 Ohio St.3d 361, 2015-Ohio-3749, 43 N.E.3d 419, ¶ 15-16. In *Walker*, we adopted the Eighth District's holding in *State ex rel. Schultz v. Cuyahoga Cty. Bd. of Elections*, 50 Ohio App.2d 1, 361 N.E.2d 477 (8th Dist.1976), that assessing the content of a proposed charter is procedural in nature. *Walker* at ¶ 15; *see Schultz* at 5-6. In both *Walker* and *State ex rel. Coover v. Husted*, 148 Ohio St.3d 332, 2016-Ohio-5794, 70 N.E.3d 587, we held that elections officials did not abuse their discretion in determining that proposed county charters did not satisfy the

requirements of Article X, Section 3 of the Ohio Constitution in that the proposed county charters did not individually delineate the powers and duties of the county officers.

{¶ 34} The case law on this issue, including *Walker*, is unnecessarily confusing in that courts have stated that elections officials cannot determine the "substantive" constitutionality of a proposed county charter but can determine whether the proposed county charter meets "procedural" constitutional requirements by, paradoxically, examining the "substance" of the proposed county charter. Not only are these cases confusing, they conflict with the far more workable holding in *State ex rel. Youngstown v. Mahoning Cty. Bd. of Elections,* 144 Ohio St.3d 239, 2015-Ohio-3761, 41 N.E.3d 1229, ¶ 11 ("An unconstitutional amendment may be a proper item for referendum or initiative. Such an amendment becomes void and unenforceable only when declared unconstitutional by a court of competent jurisdiction. Any other conclusion would authorize a board of elections to adjudicate a constitutional question and require this court to affirm its decision even if the court disagreed with the board's conclusion on the underlying constitutional question, so long as the board had not abused its discretion"). Ultimately, the substantive/procedural distinction is without meaning in these cases.

{¶ 35} Whether a proposed county charter delineates the powers of the county officials is, at least arguably, a substantive issue. Indeed, the Medina County Board of Elections states that the "primary question is whether the petition's *substantive terms* meet the requirements of law." (Emphasis added.) The line between what elections officials have the authority to determine (procedural issues) and what the elections official cannot determine (substantive issues) is so blurred that it is functionally arbitrary in some cases.

{¶ 36} I would overrule *Walker* and *Coover* because the standard created is an unworkable standard and I would hold that elections officials do not have

12

authority to make determinations of constitutionality; that authority is reserved for the judiciary alone. *See Beagle v. Walden*, 78 Ohio St.3d 59, 62, 676 N.E.2d 506 (1997). " '[T]he administration of justice by the judicial branch of the government cannot be impeded by the other branches of the government in the exercise of their respective powers.' " *State v. Bodyke*, 126 Ohio St.3d 266, 2010-Ohio-2424, 933 N.E.2d 753, ¶ 45, quoting *State ex rel. Johnston v. Taulbee*, 66 Ohio St.2d 417, 423 N.E.2d 80 (1981), paragraph one of the syllabus.

{¶ 37} For these reasons, I would hold that the Medina and Athens County Boards of Elections exceeded their authority and thereby abused their discretion in refusing to place the proposed county charters on the ballot. Whether the proposed county charters are constitutional are decisions for the courts, and as we have consistently held, those decisions should be made only after the election, if the measures pass. *State ex rel. Cramer v. Brown,* 7 Ohio St.3d 5, 6, 454 N.E.2d 1321 (1983). Accordingly, I would grant the writs.

O'NEILL, J., concurs in the foregoing opinion.

————————————

Terry J. Lodge, for relators.

Keller J. Blackburn, Athens County Prosecuting Attorney, and Zachary L. Saunders, Assistant Prosecuting Attorney, for Athens County respondents.

S. Forrest Thompson, Medina County Prosecuting Attorney, and Michael K. Lyons, Assistant Prosecuting Attorney, for Medina County respondents.

Porter, Wright, Morris, & Arthur, L.L.P., and L. Bradfield Hughes, in support of respondents, for amici curiae Affiliated Construction Trades Ohio Foundation, the Ohio Chamber of Commerce, the National Association of Royalty Owners, and the American Petroleum Institute.

Chad A. Endsley, Leah F. Curtis, and Amy M. Milam, in support of respondents, for amicus curiae Ohio Farm Bureau Federation.

————————————