NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2020-OHIO-4208

[THE STATE EX REL.] NAUTH ET AL. *v.* DIRHAM, FIN. DIR., ET AL.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Nauth v. Dirham*, Slip Opinion No. 2020-Ohio-4208.]**

*Elections—Mandamus—Writs of mandamus sought to compel city finance director to resubmit referendum petition to board of elections and to compel members of board of elections to either certify as valid signatures that were previously invalidated or hold a hearing—Relators failed to prove by clear and convincing evidence that signatures were invalidated and failed to prove that respondents abused their discretion—Writs denied.*

(No. 2020-0179—Submitted August 18, 2020—Decided August 26, 2020.)

IN MANDAMUS.

_____

**Per Curiam.**

{¶ 1} A referendum petition filed by relators, Marie J. Nauth and a group called Concerned Citizens of Medina City ("CCMC"), fell 44 signatures short of

qualifying for the November 3, 2020 general-election ballot. Among other prayers for relief, they seek a writ of mandamus directing respondents Pamela B. Miller, John V. Welker Jr., Larry G. Cray, and Charles E. Calvert, members of the Medina County Board of Elections (collectively, "the board"), to certify as valid 47 signatures that relators say the board invalidated as not genuine. They also seek a writ of mandamus directing respondent Keith H. Dirham, the Medina city finance director, to resubmit the referendum petition to the board to allow for reexamination and certification of the signatures in dispute. Relators also request oral argument.

{¶ 2} We deny the writs and deny the request for oral argument. Relators have failed to prove by clear and convincing evidence that the 47 signatures at issue were invalidated in the first place. And their constitutional arguments fail because this mandamus action is sufficient to protect any rights to procedural due process that relators may have.

## I. Background

{¶ 3} On July 8, 2019, the Medina city council passed Ordinance 112-19, which prohibits discriminatory conduct in housing, employment, and public accommodations based on sexual orientation and gender identity or expression. The city's mayor signed the ordinance on July 9. On July 31, CCMC submitted to Dirham a petition to subject the ordinance to a referendum under R.C. 731.29. The referendum petition consisted of 81 part-petitions. The petition needed 983 valid signatures to qualify for the ballot.

{¶ 4} On August 12, 2019, Dirham delivered the referendum petition to the board for a determination of the number of valid signatures, as required by R.C. 731.29. The board found that the petition contained 1,199 signatures and validated 939 of the signatures—44 fewer than the number required. The board found 260 signatures to be invalid for various reasons, including 59 signatures that did not match the signers' voter-registration cards. The board advised Dirham of the

number of valid signatures on August 19 and returned the referendum petition to him.

{¶ 5} On October 18, 2019, CCMC submitted to the board an "Appeal/Request for Review of Order Invalidating Signatures on Referendum Petition." The request stated that CCMC "believes that a significant number of * * * signatures were improperly invalidated, depriving the electors of their right to participate in this referendum process." The request did not include any evidence or further explanation of the basis for CCMC's belief.

{¶ 6} The board did not respond to CCMC's request. Having heard nothing in response to the request for an appeal, Nauth, a member of CCMC's "Referendum Petition Committee," and CCMC submitted a written protest to the board on November 18, 2019. In the protest, they claimed that the board improperly invalidated the petition signatures of at least 47 electors. Attached to the protest were 47 affidavits of persons whose signatures the board allegedly found to be invalid. Each affidavit stated that the affiant (1) is a resident of the city of Medina, (2) is a registered voter, and (3) signed the referendum petition for Ordinance 112-19 to be submitted to the voters. Each affidavit also stated: "[I]t was improper to say that the signature [on the petition] did not match my signature on file with the board of elections."

{¶ 7} The board took no action on relators' protest. Therefore, in a letter dated December 19, 2019, relators' counsel asked Dirham in writing to resubmit the referendum petition to the board for another review of the signatures. Dirham also received an unsigned letter, dated that same day, from CCMC, which likewise requested that he return the petition to the board for another review. CCMC's letter claimed that "after obtaining a public records request and after further review, it was discovered that 59 of the signatures of registered voters in the City of Medina were invalidated due to what the board termed 'non-matching signature.' " The letter further informed Dirham that CCMC had obtained affidavits from 47 of those

59 signatories, attesting that the affiants had, in fact, signed the petition and they wanted their signatures to be counted.

{¶ 8} When Dirham did not resubmit the petition to the board, relators made one final plea to the board. On January 24, 2020, relators asked for a "public hearing review concerning 59 signatures that were invalidated for what the board termed non-matching signature." Relators' letter to the board stated that the 47 affidavits previously submitted to the board came from "registered voters in the City of Medina whose signatures were invalidated for non-matching signature." Just as with relators' prior requests for a hearing, the board did not respond. In an affidavit submitted as evidence in this case, the board's director states that the board declined to entertain the appeal because (1) there is no statutory procedure allowing for a protest of the board's invalidation of signatures on a referendum petition, (2) the board deemed the appeals untimely due to the amount of time that had passed since it had determined that the petition contained an inadequate number of valid signatures, and (3) the board did not have access to the petition, because it had returned the petition to the city of Medina in August 2019.

{¶ 9} Relators commenced this action on February 3, 2020, seeking a writ of mandamus that directs Dirham to resubmit the referendum petition to the board and a writ of mandamus that either directs the board to reexamine the signatures on the referendum petition and certify as valid the signatures of qualified electors who have "proven by undisputed sworn affidavit" that they signed the referendum petition or, in the alternative, directs the board to hold a hearing as requested by relators.

{¶ 10} This court granted an alternative writ and set a schedule for the submission of evidence and briefing. 158 Ohio St.3d 1481, 2020-Ohio-1487, 143 N.E.3d 518. The parties submitted their evidence and merit briefs, and the case is ripe for decision.

## II. Analysis

{¶ 11} To be entitled to a writ of mandamus, relators must establish (1) a clear legal right to the requested relief, (2) a clear legal duty on the part of the board and/or Dirham to provide it, and (3) the lack of an adequate remedy in the ordinary course of law. *State ex rel. Oberlin Citizens for Responsible Dev. v. Talarico*, 106 Ohio St.3d 481, 2005-Ohio-5061, 836 N.E.2d 529, ¶ 11. Relators must prove these elements by clear and convincing evidence. *State ex rel. Scott v. Franklin Cty. Bd. of Elections*, 139 Ohio St.3d 171, 2014-Ohio-1685, 10 N.E.3d 697, ¶ 14.

{¶ 12} Relators satisfy the third element because they have no statutory right to appeal the board's invalidation of signatures on the referendum petition, *see generally* R.C. 731.29 through 731.41. And even though relators could theoretically pursue a declaratory-judgment action in common pleas court, a declaratory judgment would not give relators a complete remedy unless coupled with a mandatory injunction to compel Dirham and/or the board to perform the requested acts. When a mandatory injunction would be needed to obtain complete relief, a declaratory-judgment action is not an adequate remedy at law and mandamus is an appropriate remedy. *State ex rel. Webb v. Bliss*, 99 Ohio St.3d 166, 2003-Ohio-3049, 789 N.E.2d 1102, ¶ 23; *see also State ex rel. Huntington Ins. Agency, Inc. v. Duryee*, 73 Ohio St.3d 530, 537, 653 N.E.2d 349 (1995) ("Since a mandatory injunction is an extraordinary remedy, it does not constitute an adequate remedy in the 'ordinary' course of the law").

{¶ 13} As to the first two elements, relators must show that the board and/or Dirham engaged in fraud, corruption, or an abuse of discretion. *See State ex rel. Waters v. Spaeth*, 131 Ohio St.3d 55, 2012-Ohio-69, 960 N.E.2d 452, ¶ 7; *State ex rel. Sinay v. Sodders*, 80 Ohio St.3d 224, 232, 685 N.E.2d 754 (1997). Relators do not allege fraud or corruption in this case. Rather, they contend that both the board and Dirham abused their discretion in taking actions that have kept the referendum petition from being certified for placement on the November 3, 2020 general-

election ballot. An "abuse of discretion" connotes an unreasonable, arbitrary, or unconscionable attitude. *Id*. Before considering relators' arguments, we first consider two preliminary matters.

### A. *Relators' Action Is Not Moot*

{¶ 14} Dirham suggests that this court need not reach the merits of relators' mandamus action because it is moot. Because CCMC originally sought to have the referendum petition placed on the ballot for the November 5, *2019* general election, Dirham argues that the completion of that election has mooted this case. Dirham's argument is incorrect.

{¶ 15} Dirham correctly notes that when CCMC submitted its petition to the city, the cover page of the submission indicated that CCMC sought placement of the referendum on the November 5, 2019 general-election ballot. But based on the timing of the ordinance's passage and the resulting time frame for a referendum under R.C. 731.29, it was impossible for the referendum to qualify for the 2019 general election. Under R.C. 731.29, the board could have put the referendum on the ballot (if at all) no sooner than "the next general election occurring subsequent to ninety days after the [city] auditor * * * certifie[d] the sufficiency and validity of the petition to the board of elections."[1]

{¶ 16} Even if Dirham had been able to certify the sufficiency and validity of the petition on August 19, 2019 (i.e., the date it was returned to him by the board), the November 5, 2019 general election was less than 90 days away. By operation of law, the referendum could go on the ballot no sooner than the November 3, 2020 general election. *See* R.C. 731.29.

---

1. In Medina, the finance director serves as the municipal fiscal officer and, as such, is the equivalent of the city auditor for purposes here. *See State ex rel. Save Your Courthouse Commt. v. Medina*, 157 Ohio St.3d 423, 2019-Ohio-3737, 137 N.E.3d 1118, ¶ 8, fn. 1; *see also State ex rel. Donahue v. Bellbrook*, 44 Ohio St.2d 36, 37-38, 336 N.E.2d 635 (1975) ("In the absence of an official specifically designated * * * city auditor, a referendum petition must be filed with the official who in fact performs the duties of * * * auditor").

{¶ 17} The fact that CCMC listed November 5, 2019, as the election at which it was seeking placement on the ballot is of no legal significance. The appropriate election date for a valid referendum petition is not a matter of the proponents' choosing. *State ex rel. Baur v. Medina Cty. Bd. of Elections*, 90 Ohio St.3d 165, 168, 736 N.E.2d 1 (2000). Rather, it "is a mechanical, administrative matter, and error concerning the date is not fatal to the referendum." *Id.* In this case, CCMC's referendum petition could not appear on the ballot until November 3, 2020, no matter what the petition said when the group submitted it to Dirham. Accordingly, this matter is not moot.

*B. Laches Does Not Bar Relators' Action*

{¶ 18} Both the board and Dirham raise laches as a bar to relators' mandamus action. The elements of a laches defense are (1) unreasonable delay or lapse of time in asserting a right, (2) absence of an excuse for the delay, (3) actual or constructive knowledge of the injury or wrong, and (4) prejudice to the other party. *State ex rel. Polo v. Cuyahoga Cty. Bd. of Elections*, 74 Ohio St.3d 143, 145, 656 N.E.2d 1277 (1995).

{¶ 19} CCMC did not raise a concern about the board's invalidation of signatures until October 18, 2019, two months after the board rejected the petition. And relators did not file this mandamus action until more than five months after the board rejected the petition. However, even assuming this was an unreasonable delay, neither Dirham nor the board has shown prejudice.

{¶ 20} "To successfully invoke the defense of laches, '* * * it must be shown that the person for whose benefit the doctrine will operate has been materially prejudiced by the delay of the person asserting the claim.' " *State ex rel. Madden v. Windham Exempted Village School Dist. Bd. of Edn.*, 42 Ohio St.3d 86, 90, 537 N.E.2d 646 (1989), quoting *Smith v. Smith*, 168 Ohio St. 447, 156 N.E.2d 113 (1959), paragraph three of the syllabus. Both the board and Dirham claim that the delay between the rejection of the petition and the filing of this action has caused

uncertainty with respect to the challenged ordinance, which has now been in effect since last year. The board also contends that it now has to deal with this matter in a year with a presidential election, "which is the busiest and most time consuming activity the board engages in." But this court need not decide whether these circumstances constitute prejudice for laches purposes because they were not caused by relators' delay.

{¶ 21} As noted above, even if relators had acted sooner, the November 3, 2020 election is the earliest election in which the referendum could appear on the ballot. Accordingly, the prejudice argued by Dirham and the board is not truly a product of relators' delay but rather of the timing of the ordinance's passage and the timeline set forth in R.C. 731.29. For these reasons, laches does not bar relators' mandamus action.

### C. No Statutory or Due-Process Right to a Protest Hearing

{¶ 22} In their first proposition of law, relators argue that the board abused its discretion by not holding a hearing on their protest. Relators further contend that they have a due-process right to protest the board's certification of an insufficient number of signatures on the petition.

{¶ 23} Under the framework of R.C. 731.29, relators' desired referendum cannot be placed on the ballot until (1) the board validates a sufficient number of signatures, (2) Dirham certifies the sufficiency and validity of the petition to the board, and (3) the board determines under R.C. 3501.11(K) and 3501.39 that the petition is sufficient and valid. *See also Sinay*, 80 Ohio St.3d at 231, 685 N.E.2d 754 (describing identical process for municipal initiative petitions governed by R.C. 731.28). In this case, relators did not get past the first step because the board did not validate a sufficient number of signatures for the referendum to qualify for the ballot. And while R.C. 3501.39 provides a statutory mechanism for a protester to challenge a board of elections' certification of a municipal referendum petition for the ballot, *see State ex rel. SuperAmerica Group v. Licking Cty. Bd. of Elections*,

80 Ohio St.3d 182, 187, 685 N.E.2d 507 (1997), there is no statutory mechanism for a referendum proponent to protest a finding by a board of elections that a petition contained an insufficient number of signatures. Relators, therefore, have no statutory right to a hearing before the board.

{¶ 24} Relators nevertheless argue that they have a constitutional, due-process right to a board hearing on their protest. Relators' argument is flawed, however, because it overlooks the availability of mandamus as a remedy. Even assuming that the right to have petition signatures properly validated is a protected liberty interest for due-process purposes, this mandamus action provides all the process that relators are due. *Schmitt v. LaRose*, 933 F.3d 628, 642 (6th Cir. 2019); *see also State ex rel. Van Auken v. Blackwell*, 10th Dist. Franklin No. 04AP-952, 2004-Ohio-5355, ¶ 16 (noting that the absence of a statutory remedy and the resulting need to pursue a mandamus action in election cases is not a deprivation of due process).

{¶ 25} Relators' first proposition of law is therefore without merit.

*D. Relators Have Not Shown that the Board Struck Valid Signatures*

{¶ 26} In their second proposition of law, relators argue that they are entitled to have the signatures of the 47 affiants counted, which would then allow the referendum to be on the November 3, 2020 ballot. They contend that Dirham and the board abused their discretion by refusing to consider "undisputed evidence" from the 47 affiants who swore that they had signed the referendum petition and whose signatures were allegedly invalidated for not matching the signature on file with the board. They therefore seek a writ of mandamus directing Dirham to resubmit the referendum petition to the board and a writ directing the board to certify the signatures of the 47 affiants or to hold a hearing.

{¶ 27} Relators rely on *State ex rel. Crowl v. Delaware Cty. Bd. of Elections*, 144 Ohio St.3d 346, 2015-Ohio-4097, 43 N.E.3d 406, and *Scott*, 139 Ohio St.3d 171, 2014-Ohio-1685, 10 N.E.3d 697. In both of those cases, a

nominating petition did not contain enough signatures to qualify a candidate for the ballot after the board of elections invalidated signatures as "not genuine." *Crowl* at ¶ 3-4; *Scott* at ¶ 6. The boards of elections in *Crowl* and *Scott* held hearings on the candidates' protests, but they denied the protests despite uncontroverted evidence that the petition signatures in question were genuine. *Crowl* at ¶ 4-5; *Scott* at ¶ 7-8. This court held that the boards of elections had abused their discretion and granted writs of mandamus ordering the boards of elections to add the candidates' names to the ballot. *Crowl* at ¶ 11; *Scott* at ¶ 19-20.

{¶ 28} Relators argue that the result in this case should be the same as in *Scott* and *Crowl*. They contend that the board rejected signatures of 47 persons as "non-matching" when those persons did, in fact, sign the petition. Even though no hearing was held on their protest, relators contend that the 47 affidavits submitted in this case should be deemed undisputed evidence of the petition signatures' authenticity that Dirham and the board cannot ignore. But this court need not reach the issue whether Dirham and/or the board abused their discretion by disregarding the 47 affidavits, because relators have not shown by clear and convincing evidence that any of the 47 signatures at issue were invalidated *at all*—much less that they were invalidated for not matching the alleged signers' voter-registration cards.

{¶ 29} "Clear and convincing evidence" is "that measure or degree of proof which is more than a mere 'preponderance of the evidence,' but not to the extent of such certainty as is required 'beyond a reasonable doubt' in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954), paragraph three of the syllabus; *see also Squire v. Geer*, 117 Ohio St.3d 506, 2008-Ohio-1432, 885 N.E.2d 213, ¶ 15. Relators submitted as evidence the affidavits of 47 electors whose signatures were allegedly invalidated. Each of these affidavits stated, "I swear that I signed the petition, that it was my signature, and that it was improper to say that the signature did not match my signature on file

with the board of elections." None of the affidavits, however, asserted personal knowledge that the board had invalidated an affiant's signature on that basis or any other. And crucially, none of the part-petitions containing the signatures of the 47 affiants, or any other evidence showing which signatures were invalidated, has been submitted as evidence.

{¶ 30} Though relators represent that the board invalidated the 47 affiants' signatures based on a mismatch with their voter-registration cards, there is no evidence in the record to corroborate this assertion. Indeed, the board notes that the petition has been in the city of Medina's possession since the board concluded its review in August 2019 and that the board has not compared the affidavits with the petition. The record does contain a letter from CCMC to Dirham, in which CCMC represented that its review, which it conducted after obtaining public records, revealed that the board invalidated 59 signatures on the basis that they were "non-matching." CCMC's letter also stated that 47 of the 59 signatories attested to the genuineness of their signatures on the petition.

{¶ 31} But even this evidence is insufficient to satisfy relators' burden. The letter is unsigned, unsworn, and lacks any indicia of personal knowledge with regard to the review of the petition. Indeed, the letter does not even state who reviewed the petition to determine the names of the persons whose signatures were invalidated. Thus, relators have offered little more than a bare allegation that the 47 affidavits submitted into evidence are from persons whose signatures were invalidated by the board. On this record, this court cannot determine by clear and convincing evidence that the board invalidated the 47 signatures at issue at all, much less for the reason that relators say. *See State ex rel. Heavey v. Husted*, 152 Ohio St.3d 579, 2018-Ohio-1152, 99 N.E.3d 372, ¶ 10-13 (denying writ because the relators failed to prove signatures were improperly invalidated due to mismatch between voter-registration card and petition when signature cards were not in evidence). Accordingly, relators are not entitled to writs of mandamus.

*E. Relators' Request for Oral Argument*

**{¶ 32}** Relators have requested oral argument in this case. Oral argument is not required in an original action in this court. *State ex rel. Lorain v. Stewart*, 119 Ohio St.3d 222, 2008-Ohio-4062, 893 N.E.2d 184, ¶ 17; *see also* S.Ct.Prac.R. 17.02(A). In exercising discretion to grant a request for oral argument under S.Ct.Prac.R. 17.02(A), this court considers "whether the case involves a matter of great public importance, complex issues of law or fact, a substantial constitutional issue, or a conflict among courts of appeals." *State ex rel. Davis v. Pub. Emps. Retirement Bd.*, 111 Ohio St.3d 118, 2006-Ohio-5339, 855 N.E.2d 444, ¶ 15.

**{¶ 33}** Relators contend that this case involves significant questions of constitutional and statutory law as well as implications regarding the referendum process in Ohio. We deny the request for oral argument, however, because none of these issues is truly implicated in this case in light of relators' failure to provide a sufficient evidentiary record to support their claims.

### III. Conclusion

**{¶ 34}** Without clear and convincing evidence showing that the 47 signatures at issue were invalidated and for what reasons, relators have not met their burden to show an abuse of discretion by either Dirham or the board. Relators' constitutional claims are also without merit. We therefore deny relators' requested writs of mandamus.

Writs denied.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

The Law Office of Josh Brown, L.L.C., and Joshua J. Brown, for relators.

Gregory A. Huber, Medina Law Director, for respondent Keith H. Dirham, Medina Finance Director.

S. Forrest Thompson, Medina County Prosecuting Attorney, and Michael K. Lyons and Samuel A. Sheffield, Assistant Prosecuting Attorneys, for respondents Pamela B. Miller, John V. Welker Jr., Larry G. Cray, and Charles E. Calvert.

_____