[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Maumee v. Lucas Cty. Bd. of Elections*, Slip Opinion No. 2025-Ohio-2516.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2025-OHIO-2516

THE STATE EX REL. THE CITY OF MAUMEE ET AL. *v.* LUCAS COUNTY BOARD OF ELECTIONS.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Maumee v. Lucas Cty. Bd. of Elections*, Slip Opinion No. 2025-Ohio-2516.]**

*Elections—Prohibition and Mandamus—Board of elections found petitions seeking to recall mayor and six members of city council valid and certified recall questions for a special primary election—Writ of prohibition sought to prevent board from placing recall questions on ballot, and writ of mandamus sought to order board to grant protests against recall petitions— Board erred in deeming R.C. 705.92 applicable to city—Writ of prohibition granted, and writ of mandamus denied as moot.*

(No. 2025-0514—Submitted July 8, 2025—Decided July 17, 2025.)

IN PROHIBITION and MANDAMUS.

_____

The per curiam opinion below was joined by KENNEDY, C.J., and FISCHER,

DEWINE, BRUNNER, DETERS, HAWKINS, and SHANAHAN, JJ.

**Per Curiam.**

{¶ 1} Seven petitions were filed with respondent, the Lucas County Board of Elections, seeking to recall the mayor and six members of the city council of relator the City of Maumee under R.C. 705.92. The board found each of the petitions valid and certified the recall questions for a September 9, 2025 special primary election. The city and one of its citizens, relator Glenn Rambo, protested the certification of the recall questions for placement on the ballot, claiming that the city does not have a recall procedure under its charter, that R.C. 705.92 does not apply to the city, and that even if R.C. 705.92 were applicable, the recall petitions did not comply with the statute. The board denied the protests.

{¶ 2} Relators have filed this original action, seeking a writ of prohibition preventing the board from placing the recall questions on the September 9 special-primary-election ballot and a writ of mandamus ordering the board to grant their protests against the recall petitions. We grant the writ of prohibition because the board erred in deeming R.C. 705.92 applicable to Maumee. Because we grant the writ of prohibition, we deny the writ of mandamus as moot.

## I. FACTUAL AND PROCEDURAL BACKGROUND

{¶ 3} Maumee is a home-rule charter municipality under Article XVIII, Section 8 of the Ohio Constitution, and its charter was approved by the city's electors in 1951. Article IX, Section 3 of the charter states:

> **Removal from Office – Recall.** Any elective officer of this
> Municipality may be removed from office in such manner as is now
> or may hereafter be provided by the Constitution or laws of Ohio.

(Boldface in original.)

{¶ 4} In February 2025, seven petitions were submitted to the board, calling for the recall of Maumee Mayor James MacDonald and councilmembers Ted Kurt, Margo Puffenberger, Scott Noonan, Gabriel Barrow, Joshua Harris, and Jonathan Fiscus. Each of the petitions cited R.C. 705.92 as the authority to recall these city officials. Under R.C. 705.92, "any elective officer of a municipal corporation may be removed from office" if (1) a recall petition signed by qualified electors equal in number to at least 15 percent of the total votes cast at the last regular municipal election is filed with the board of elections and (2) a majority of votes cast on the question of the removal are affirmative. *See* R.C. 705.92(A) and (D).

{¶ 5} At a meeting on March 4, the board voted to certify each of the recall petitions and place the recall questions on the September 9, 2025 special-primary-election ballot.[1] The city filed with the board a protest of the recall questions. Rambo, a qualified elector in Maumee, filed with the board a separate protest of the recall questions.

{¶ 6} At the board's April 1 hearing on the protests, the city argued that Maumee's charter did not provide for recall elections and that the recall process in R.C. 705.92 does not apply to the city. Rambo raised the additional argument that even if R.C. 705.92 applies, the recall petitions were defective because they did not demand the election of successors for the recalled officials. The board denied the protests.

{¶ 7} The city and Rambo commenced this action on April 11. They ask for a writ of prohibition preventing the board from placing the recall questions on the September 9, 2025 special-primary-election ballot and a writ of mandamus

---

1. Under R.C. 705.92(B), if a recall petition is sufficient, "an election shall be held at the next primary or general election occurring more than ninety days from the date of the finding of the sufficiency of the petition." September 9, 2025, is not a statewide date for a general, special, or primary election. *See* R.C. 3501.01(A), (D), and (E)(1). Under the Maumee Charter, however, nonpartisan primary elections are held on the second Tuesday after the first Monday in September. Maumee Charter, art. VIII, § 3; *see also* R.C. 3501.01(D) (a special election may be held on a day authorized by a municipal or county charter for the holding of a primary election).

ordering the board to grant their protests. After the board filed its answer, we granted an alternative writ, setting a schedule for the parties' submission of evidence and merit briefs. 2025-Ohio-1614. We also granted the motion to intervene of intervening respondents Jerry Helminski, Dana Johnson, Melissa LaVarr Kerr, Amy Pauken, and Brad Reynolds. *Id.* The intervening respondents are the recall petitioners who demand the removal of the Maumee mayor and councilmembers. We refer to the board and intervening respondents collectively as "respondents."

{¶ 8} The parties filed merit briefs and a stipulation of evidence. Amici curiae RPM Commercial, L.L.C., Property Investors Network, Ohio Real Estate Investors Association, Real Estate Investors Association of Greater Cincinnati, Toledo Real Estate Investors Association, and Northwest Ohio Realtors filed a brief in support of the board, urging denial of the writs.

## II. ANALYSIS

### A. Writ of Prohibition

{¶ 9} Relators seek a writ of prohibition to prevent the board from placing the recall questions on the September 9, 2025 special-primary-election ballot. To obtain a writ of prohibition, relators must prove that the board exercised quasi-judicial power, that it lacked the authority to exercise that power, and that relators lack an adequate remedy in the ordinary course of the law. *State ex rel. Fritz v. Trumbull Cty. Bd. of Elections*, 2021-Ohio-1828, ¶ 9. When all three elements are satisfied, a writ of prohibition will issue to prevent a board of elections from placing a recall issue on the ballot. *State ex rel. Finkbeiner v. Lucas Cty. Bd. of Elections*, 2009-Ohio-3657, ¶ 40.

{¶ 10} A board of elections exercises quasi-judicial power when it holds a required hearing on a protest. *See Fritz* at ¶ 9-10. In this case, it is undisputed that the board exercised quasi-judicial power when it held a hearing on relators' protests

to the recall petitions. It is also undisputed that relators lack an adequate remedy in the ordinary course of the law given the proximity of the election.[2]

{¶ 11} So the only question for decision under the prohibition standard is whether the board lacked the authority to deny the protests. Relators can establish that the board acted without authority if they show that it "engaged in fraud or corruption, abused its discretion, or clearly disregarded applicable law in denying their protest[s]." *State ex rel. Thomas v. Wood Cty. Bd. of Elections*, 2024-Ohio-379, ¶ 23. Relators do not allege fraud or corruption on the part of the board. They instead allege that the board abused its discretion and acted in clear disregard of applicable law in denying their protests, because (1) the city's charter does not provide a mechanism for the recall of elected officials, (2) the recall procedure in R.C. 705.92 does not apply since it was never adopted by the city, and (3) even if R.C. 705.92 did apply, the recall petitions here did not comply with the statutory requirements.

### 1. Maumee's Charter Allows for Recall as Provided by Law

{¶ 12} Relators first argue that Maumee's charter does not contemplate the recall of elected officials at all and therefore the board erred in allowing the recall questions to be placed on the September 9, 2025 special-primary-election ballot. Article IX of the Maumee Charter is titled "Initiative, Referendum, and Recall," and Section 3 of Article IX contains the heading "Removal from Office – Recall."[3] However, Article XIII, Section 3 of the charter states: "The Article and Section

---

2. Although we are not bound by the parties' stipulation on this legal issue, *Finkbeiner* at ¶ 17-18, the imminency of the recall election cuts against the availability of an adequate remedy in the ordinary course of the law. A civil action in common pleas court combined with any appellate process arising from it would go well past the election. *Id.* at ¶ 18.

3. The electronically accessible version of the Maumee Charter places the word "Recall" within the text of Section 3 of Article IX rather than as part of the section heading. *See* https://codelibrary.amlegal.com/codes/maumee/latest/maumee_oh/0-0-0-6562 (accessed July 9, 2025) [https://perma.cc/2UHA-5ZLQ]. However, the copy of the Maumee Charter as passed by the city's electors in 1951 shows the word "Recall" as part of the section heading.

headings herein have been inserted for convenience for purposes of reference and are not intended to define or limit the scope of, or otherwise affect, any provision of this Charter."

{¶ 13} Because of Article XIII, Section 3, which has been part of the charter since its enactment in 1951, relators contend that the use of the word "recall" in the article and its section heading is of no significance. Rather, they argue that the substantive text of Article IX, Section 3, which does not use the word "recall," controls how elected officials in Maumee may be removed from office. Article IX, Section 3 states that any elected officer of Maumee "may be *removed from office* in such manner as is now or may hereafter be provided by the Constitution or laws of Ohio." (Emphasis added.) Contending that "removal" has a different meaning than "recall," relators argue that the Maumee Charter incorporates only Article II, Section 38 of the Ohio Constitution, which provides for laws related to "removal" from office for misconduct or "other cause provided by law," *id.*[4]

{¶ 14} Relators' argument is unpersuasive. Put simply, "recall" is a method of effecting "removal" of an elected official. *See Black's Law Dictionary* (12th Ed. 2024) (defining "recall" as the "[r]emoval of a public official from office by popular vote," and defining "recall election" as "[a]n election in which voters decide whether to remove an elected official from office before the term ends"). Thus, the fact that the nonheading text of Article IX, Section 3 of the Maumee Charter specifies only that an elected officer "may be removed from office in such manner as is now or may hereafter be provided by" Ohio's Constitution or laws does not

---

4. Article II, Section 38 of the Ohio Constitution states:

> Laws shall be passed providing for the prompt removal from office, upon complaint and hearing, of all officers, including state officers, judges and members of the general assembly, for any misconduct involving moral turpitude or for other cause provided by law; and this method of removal shall be in addition to impeachment or other method of removal authorized by the constitution.

foreclose the possibility of removal by recall, because the general reference to "removal" includes recall.

{¶ 15} Moreover, R.C. 705.92, Ohio's only statute relating to recall of elected officials of a municipality, expressly provides: "Notwithstanding Section 38 of Article II, Ohio Constitution, or any other provisions in the Revised Code to the contrary, any elective officer of a municipal corporation may be removed from office by the qualified voters of such municipal corporation." The statute then sets forth the procedure for removal of the elected officers by the voters, which culminates in a "recall election." R.C. 705.92. Thus, Ohio's only statute related to recall of elected municipal officials recognizes that a "recall" is a method of "removal" from office.

{¶ 16} For these reasons, we find that the Maumee Charter does not foreclose recall as a method of removing elected officials from office. Whether the charter incorporates a statutory removal process, however, is an entirely different question, which we address below.

### 2. *Maumee Did Not Adopt R.C. 705.92 in Its Charter*

{¶ 17} Under Article XVIII, Section 7 of the Ohio Constitution, municipalities have the authority to adopt charter provisions governing local self-government, including the method by which a municipality's elected officials are recalled. *State ex rel. Hackley v. Edmonds*, 150 Ohio St. 203, 217 (1948). As noted above, Maumee has done that in its charter, allowing for the removal of elected officials "in such manner as is now or may hereafter be provided by the Constitution or laws of Ohio." Maumee Charter, art. IX, § 3.

{¶ 18} No provision in the Ohio Constitution provides a manner for recalling the elected officials of a municipality. But R.C. 705.92—which existed in nearly identical form (at G.C. 3515-71) when Maumee adopted its charter in 1951—provides a procedure for recalling elected officials of a municipality.

Respondents argue that R.C. 705.92 is a "law[] of Ohio" that applies by operation of Article IX, Section 3 of the Maumee Charter.

{¶ 19} The introductory paragraph of R.C. 705.92 states that "*any* elective officer of a municipal corporation may be removed from office by the qualified voters of such municipal corporation." (Emphasis added.) *But see State ex rel. Lockhart v. Boberek*, 45 Ohio St.2d 292, 294 (1976) (holding that R.C. 705.92 does not apply to nonchartered municipalities). The statute then details the procedure for an elected officer's removal by recall. There must be (1) a petition signed by the requisite number of qualified electors that states in 200 words or fewer the grounds upon which the removal of the elected official is sought and (2) a recall election at which the majority of votes cast are in favor of the recall. R.C. 705.92(A) and (D). In this case, the board determined that the recall petitions complied with the statutory requirements.

{¶ 20} Relators argue, however, that Article IX, Section 3 of the Maumee Charter does not, by its own force, adopt R.C. 705.92 as the city's recall process. They say that R.C. 705.92 applies only to municipalities that adopt one of the statutory forms of government set forth in R.C. Ch. 705 in lieu of a charter. As a linchpin of their argument, relators point to R.C. 705.91, which states:

> Section 705.92 of the Revised Code shall be submitted, with each [plan of government set forth in R.C. Ch. 705], to the electors of the municipal corporation as prescribed in section 705.03 of the Revised Code, and shall go into effect and form a part of any such plan of government *only to the extent to which such section has been adopted under section 705.03 of the Revised Code.*

(Emphasis added.)

8

{¶ 21} Thus, relators argue that Maumee's charter cannot be interpreted as having incorporated R.C. 705.92's recall procedure unless the city's voters adopted it either as part of a statutory plan of government under R.C. Ch. 705 or by answering a separate question regarding the recall procedure when Maumee adopted its charter in 1951. Relators argue that because neither of those things occurred, R.C. 705.92's recall procedure does not apply to Maumee.

{¶ 22} In support of their argument, relators rely primarily on *State ex rel. Richardson v. Gowdy*, 2023-Ohio-976. In *Richardson*, the relator sought, among other things, a writ of mandamus ordering a board of elections to certify the number of valid signatures on a recall petition in compliance with R.C. 705.92 and the City of East Cleveland's charter. *Id.* at ¶ 18. Even though the East Cleveland Charter detailed its own procedure for recalling elected officials, the relator argued that R.C. 705.92 was a general law that applied by virtue of a charter provision that stated that "'[a]ll general laws of the State applicable to municipal corporations now or hereafter enacted, and which are not in conflict or inconsistent with the provisions of [the] Charter . . . shall be applicable.'" *Richardson* at ¶ 19, quoting East Cleveland City Charter, § 87.

{¶ 23} In a unanimous opinion, we rejected that argument:

> R.C. 705.92 is not a law that is generally applicable to municipalities. R.C. 705.91 provides that when a municipality's electors are voting on a plan of government pursuant to R.C. 705.03, the question whether to adopt the requirements of R.C. 705.92 "shall be submitted . . . to the electors of the municipal corporation . . . ." R.C. 705.91 further provides that R.C. 705.92 "shall go into effect and form part of any such plan of government *only to the extent to which such section has been adopted under* [*R.C. 705.03*]." (Emphasis added.) We have stated that "[t]he clear meaning of R.C.

705.91 is that provisions of R.C. 705.92 go into effect only to the extent that they have been adopted by the voters of a municipal corporation as part of a home-rule charter." *State ex rel. Lockhart v. Boberek*, 45 Ohio St.2d 292, 294 (1976).

(Ellipses and bracketed text in original.) *Richardson* at ¶ 20.

{¶ 24} In so holding, we expressly rejected the Twelfth District Court of Appeals' holding in *State ex rel. McVey v. Banks*, 1983 Ohio App. LEXIS 11947 (12th Dist. July 21, 1983), whose reasoning respondents urge us to follow. *See Richardson* at ¶ 22. In *McVey*, the issue before the court of appeals was similar to the one before this court today: whether the recall procedure of R.C. 705.92 applied to a city (in *McVey*, the city was Loveland) whose home-rule charter stated that the procedure for recall elections "shall be that provided by law." *McVey* at *2. The respondents in that case (members of city council who refused to set a date for a recall election) asserted a similar argument to the one that relators assert here—that R.C. 705.92 could not apply, because Loveland voters had not specifically approved it when Loveland's charter form of government was submitted to voters for approval. *McVey* at *2-4. The court of appeals disagreed; it held that R.C. 705.91 "does not require that R.C. 705.92 be specifically adopted in accord with R.C. 705.03 when the proposed plan of government is . . . of a type created by constitutional provision, such as a home rule city charter form of government." *Id.* at *4-5. Thus, the court of appeals in *McVey* held that the Loveland Charter effectively incorporated R.C. 705.92 by its language stating that the city's recall procedure "shall be that provided by law." *Id.* at *5; *accord* 1989 Ohio Atty.Gen.Ops. No. 1989-050 (opining that "[t]he procedure set forth in R.C. 705.91 for the adoption of the recall procedures of R.C. 705.92 applies only to cities exercising one of the optional statutory plans of government set forth in [R.C. Ch.

705] and has no application to a charter municipality which chooses to incorporate statutory recall procedures into its charter").

{¶ 25} In *Richardson*, we rejected the holding in *McVey*, and noted that under R.C. 705.91, R.C. 705.92 may become effective in a municipality "'only to the extent to which such section has been adopted under [R.C. 705.03].'" (Bracketed text in original.) *Richardson*, 2023-Ohio-976, at ¶ 22, quoting R.C. 705.91. And in *Richardson*, it was undisputed that the East Cleveland Charter (like the Maumee Charter) was not adopted under R.C. 705.03. *Richardson* at ¶ 22. Relators in this case therefore argue that *Richardson* (1) supports the proposition that R.C. 705.92 applies exclusively to municipalities that adopt a statutory plan of government under R.C. Ch. 705 and (2) effectively rejected the reasoning in *McVey* and 1989 Ohio Atty.Gen.Ops. No. 1989-050.

{¶ 26} For their part, respondents and amici focus on a different part of the *Richardson* analysis. After finding *McVey* "not persuasive" because the charter at issue was not adopted under R.C. 705.03, we further observed in *Richardson* that *McVey* involved a city charter that "authorized recall elections while stating that '[t]he procedure for such recall shall be that provided by law.'" *Richardson* at ¶ 22, quoting *McVey* at *1. The East Cleveland Charter at issue in *Richardson* did not use similar "provided by law" language. *Id.* Emphasizing this aspect of *Richardson*, respondents and amici argue that Maumee's charter incorporates the "laws of Ohio," including R.C. 705.92, in a manner that East Cleveland's charter did not.

{¶ 27} We do not agree with respondents and amici. Although they are correct that Maumee's charter incorporates Ohio law more broadly than did East Cleveland's charter in *Richardson*, they overlook the significance of our holding that R.C. 705.92 *cannot* apply to a municipality unless the municipality has adopted it under R.C. 705.03, *Richardson* at ¶ 22. Indeed, this was the first basis articulated in *Richardson* for rejecting the relator's argument and the reason we found the court

of appeals' analysis in *McVey* "not persuasive." *Richardson* at ¶ 20-22. *Richardson* holds that under R.C. 705.91, R.C. 705.92 cannot apply to a municipality unless it has been adopted as part of a statutory plan of government under R.C. 705.03. *See Richardson* at ¶ 22.

{¶ 28} Since Maumee did not adopt R.C. 705.92 as part of a statutory plan of government under R.C. 705.03, its charter cannot be construed to incorporate the statute's recall procedures. R.C. Ch. 705 (formerly codified at G.C. 3515-1 et seq., H.B. No. 522, 103 Ohio Laws 767) applies to optional forms of municipal government that voters of a municipality may adopt by referendum vote; the chapter has no application to municipalities in Ohio that have adopted a charter form of government under the home-rule powers granted by the Ohio Constitution. *Switzer v. State ex rel. Silvey*, 103 Ohio St. 306 (1921), paragraph three of the syllabus. Accordingly, relators are correct that the Maumee Charter does not currently allow for recall of the city's elected officials.

*3. We Reject the Suggestion that We Should Revisit Our Holding in* Richardson

{¶ 29} The board and amici suggest that we revisit *Richardson* and "correct" mistakes the court made in that case. A major underpinning of *Richardson* is this court's decision in *Lockhart*, 45 Ohio St.2d 292, which holds that "'[t]he clear meaning of R.C. 705.91 is that provisions of R.C. 705.92 go into effect only to the extent that they have been adopted by the voters of a municipal corporation as part of *a home-rule charter*.'" (Emphasis added.) *Richardson*, 2023-Ohio-976, at ¶ 20, quoting *Lockhart* at 294; *see also Lockhart* at 293 (stating that R.C. Ch. 705 "deals with the adoption and the form of municipal *charters*, and sets out various optional plans *of charter government* which may be submitted to the electors of a municipal corporation" [emphasis added]).

{¶ 30} As the amici note in their brief in support of the board, this court in *Lockhart* inaccurately used the term "charter." The provisions of R.C. Ch. 705 speak to statutory *plans* of government that a municipality's electors may adopt in

an election; the *plans* of government in that chapter are *not* "charters." Indeed, R.C. Ch. 705 recognizes that a charter is something different than a statutory plan. *See* R.C. 705.02 (stating that a proposition to adopt a plan of government under R.C. Ch. 705 shall not be submitted to electors "as long as the question of choosing [a] commission [to frame a charter] or of adopting a charter framed by such commission is pending"). Because of this court's inaccurate use of the term "charter" in *Richardson*, amici and the board assert that *Richardson* "requires clarification as it repeats . . . an inaccuracy, first stated in [*Lockhart*]." Specifically, amici urge this court to "reaffirm *Switzer*," "correct the mistake" in *Lockhart* and *Richardson*, and clarify that a charter municipality does not have to adopt its charter under R.C. Ch. 705 in order to incorporate statutory provisions from that chapter into its charter.

{¶ 31} Though they frame their plea as seeking "clarification," the board and amici are asking us to do nothing less than overrule *Richardson* and *Lockhart*. We decline the invitation. While it is true that in *Lockhart* we inaccurately used the term "charter" when referring to plans of government that a municipality's voters may adopt under R.C. Ch. 705, the essential rule from *Lockhart* that we reiterated in *Richardson* remains sound. That is, the recall procedure in R.C. 705.92 is not a law that is generally applicable to municipalities: R.C. 705.92 can go into effect in a city only if it is adopted under the procedure set forth in R.C. 705.03 and 705.91 for cities adopting a statutory plan of government under R.C. Ch. 705. *See Richardson* at ¶ 20. And contrary to what amici and the board argue, our reaffirming *Switzer* would not help their position. *Switzer* holds that the statutes relating to optional plans of municipal government (i.e., R.C. Ch. 705, formerly codified at G.C. 3515-1 et seq.) have "no application" to municipalities like Maumee that have adopted a charter form of government. *See Switzer*, 103 Ohio St. 306, at paragraph three of the syllabus. If R.C. Ch. 705 has "no application" to charter municipalities, R.C. 705.92 cannot apply to Maumee. The language of

Article XI, Section 3 of the Maumee Charter cannot be construed to incorporate a statute that is not generally applicable to municipalities, much less to charter municipalities. *See Richardson* at ¶ 20.

{¶ 32} Accordingly, the board erred in denying relators' protests. We grant a writ of prohibition to prevent the board from placing the recall questions on the September 9, 2025 special-primary-election ballot. Because we hold that R.C. 705.92 does not apply to Maumee, we need not reach relators' alternative argument that the form of the recall petitions did not comply with the statute.

### B. Writ of Mandamus

{¶ 33} Relators also seek a writ of mandamus ordering the board "to grant the protests brought by Relators against the placement of the recall questions on the ballot." For a writ of mandamus to issue, relators must establish by clear and convincing evidence (1) a clear legal right to the relief sought, (2) a clear legal duty on the part of the board to provide it, and (3) the lack of an adequate remedy in the ordinary course of the law. *See State ex rel. Nauth v. Dirham*, 2020-Ohio-4208, ¶ 11.

{¶ 34} The parties disagree about whether mandamus is available as a remedy in this case. Respondents contend that mandamus is not an appropriate remedy to challenge a board of election's decision to place an issue or candidate on the ballot. Relators counter that this court has allowed similar mandamus claims following a relator's unsuccessful protest hearing before a board of elections.

{¶ 35} It is unnecessary for us to resolve that issue here. Because we grant a writ of prohibition preventing the board from placing the recall questions on the ballot, relators' mandamus claim is moot. *See State ex rel. Moscow v. Clermont Cty. Bd. of Elections*, 2022-Ohio-3138, ¶ 25 (denying as moot the requested writ of mandamus when the court granted a writ of prohibition to prevent an issue from appearing on the ballot).

14

### III.  CONCLUSION

{¶ 36} Because R.C. 705.92 does not apply to Maumee, the board acted in clear disregard of applicable law in denying relators' protests of the recall petitions. We therefore grant relators' request for a writ of prohibition.  We deny as moot their request for a writ of mandamus.

Writ of prohibition granted
and writ of mandamus denied as moot.

_____

McTigue & Colombo, L.L.C., J. Corey Colombo, Donald J. McTigue, and Helen G. Lohre, for relators.

Alan J. Lehenbauer, Maumee Law Director, for relator the City of Maumee.

Julia R. Bates, Lucas County Prosecuting Attorney, and John A. Borell, Kevin A. Pituch, and Evy M. Jarrett, Assistant Prosecuting Attorneys, for respondent.

Isaac Wiles Burkholder & Miller, L.L.C., Donald C. Brey, Ryan C. Spitzer, Trista M. Turley, and Kristen B. Lippert, for intervening respondents.

Mayle, L.L.C., Andrew R. Mayle, Richard R. Gillum, Benjamin G. Padanilam, and Nichole K. Papageorgiou, urging denial of the writ for amici curiae.

_____